UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
NORTHERN DIVISION

| | |
|---|---|
| SHEILA GARVEY,<br><br>          Plaintiff,<br><br>v.<br><br>OGDEN CLINIC PROFESSIONAL CORP.,<br>a Utah professional corporation; and<br>COLUMBIA OGDEN MEDICAL CENTER,<br>INC., a Utah corporation dba Ogden<br>Regional Medical Center,<br><br>          Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART OGDEN CLINIC'S MOTION FOR ATTORNEY FEES AND NONTAXABLE COSTS**<br>**(DOC. NO. 156)**<br><br>Case No. 1:22-cv-00077<br><br>Magistrate Judge Daphne A. Oberg |

Dr. Sheila Garvey brought this action against Ogden Clinic Professional Corp. (Ogden Clinic) and Columbia Ogden Medical Center, Inc. (the Hospital), after Ogden Clinic terminated her employment.[1]  Dr. Garvey asserted claims against both defendants for breach of contract, breach of the covenant of good faith and fair dealing, tortious interference with business relations, libel and defamation, gender discrimination under Title VII of the Civil Rights Act of 1964,[2] and age discrimination under the Age Discrimination in Employment Act[3] (ADEA).[4]  In April 2025, the court granted the

---

[1] (*See* Am. Compl., Doc. No. 45.)

[2] 42 U.S.C. §§ 2000e, et seq.

[3] 29 U.S.C. §§ 621–634.

[4] (*See* Am. Compl., Doc. No. 45.)

defendants' motions for summary judgment and entered judgment in favor of the defendants on all claims.[5]

Ogden Clinic filed a timely motion for attorney fees and nontaxable costs.[6] Ogden Clinic seeks to recover fees incurred in defending against all claims in this action, totaling $159,218.00 (at the time the motion was filed), based on a fee-shifting provision in Dr. Garvey's employment contract.[7]  Ogden Clinic also seeks to recover $5,116.18 in costs associated with retaining an expert witness.[8]  Dr. Garvey opposes the motion, arguing Ogden Clinic is only contractually entitled to recover fees for defending against the two contract claims.[9]  Dr. Garvey also contends Ogden Clinic's motion should be denied in its entirety for failure to allocate its fees between compensable and noncompensable claims.[10]  Alternatively, Dr. Garvey suggests the court should award only one-third of the requested fees.[11]

---

[5] (Mem. Decision & Order Granting Defs.' Mots. for Summ. J. (Summ. J. Order), Doc. No. 154; J. in a Civil Case, Doc. No. 155.)

[6] (Ogden Clinic's Mot. for Award of Att'y Fees & Non-taxable Costs (Mot.), Doc. No. 156.)  Ogden Clinic separately filed a bill of costs, seeking to recover costs taxable pursuant to 28 U.S.C. § 1920 and DUCivR 54-1(b).  (Bill of Costs, Doc. No. 157.)  The bill of costs is not addressed in this order.

[7] (Mot. 1, 4, Doc. No. 156.)

[8] (*Id.*)

[9] (Mem. in Opp'n to Ogden Clinic's Mot. for Award of Att'y Fees & Non-taxable Costs (Opp'n) 1–8, Doc. No. 169.)

[10] (*Id.* at 3–4.)

[11] (*Id.* at 8 n.1.)

Ogden Clinic's motion is granted in part and denied in part.  As explained below, Ogden Clinic is only entitled to recover its attorney fees incurred in defending against the contract claims.  Based on the evidence presented with the motion and the full record in this case, the court finds forty percent of Ogden Clinic's attorney fees since Dr. Garvey filed this case are fairly allocated to the defense of the contract claims.  The court excludes fees incurred before Dr. Garvey filed this case because Ogden Clinic has not shown it incurred them in defending against the contract claims.  Ogden Clinic is also entitled to recover the full amount of its requested nontaxable costs.  Accordingly, Ogden Clinic is awarded $61,427.80 in attorney fees and $5,116.18 in nontaxable costs.

## ANALYSIS

A. <u>Attorney Fees</u>

Rule 54 of the Federal Rules of Civil Procedure requires a motion for attorney fees and nontaxable costs to specify "the statute, rule, or other grounds entitling the movant to the award."[12]  When exercising supplemental jurisdiction over pendent state claims, the court applies the substantive law of the forum state, including state law governing attorney fee awards.[13]  Under Utah law, attorney fees are awardable if

---

[12] Fed. R. Civ. P. 54(d)(2)(B)(ii).

[13] *Jones v. Denver Post Corp.*, 203 F.3d 748, 757 (10th Cir. 2000).

authorized by statute or by contract.[14]  "A party who requests an award of attorney fees has the burden of presenting evidence sufficient to support an award."[15]

### 1.  Compensable Claims

Ogden Clinic contends it is entitled to attorney fees under Mr. Garvey's employment contract, which provides:

> In the event either party defaults in the performance of any term or condition hereunder, the defaulting party shall pay all costs incurred by the other party in enforcing the terms hereof, including costs and/or reasonable attorney's fees, whether incurred through legal action or otherwise and whether incurred before or after judgment.[16]

The parties do not dispute that Ogden Clinic's attorney fees incurred in defending against Dr. Garvey's contract claims are compensable under this provision.[17]  In its summary judgment order, the court determined Ogden Clinic had cause to terminate Dr. Garvey under the contract because the undisputed facts showed she breached a material term.[18]  Accordingly, the fee-shifting provision applies to Ogden Clinic's defense of Dr. Garvey's claims arising under the contract.

---

[14] *See Dixie State Bank v. Bracken*, 764 P.2d 985, 988 (Utah 1988); *see also Jones v Riche*, 2009 UT App 196, ¶ 2, 635 P.3d 357, 358 ("If the legal right to attorney fees is established by contract, Utah law clearly requires the court to apply the contractual attorney fee provision and to do so strictly in accordance with the contract's terms.").

[15] *Rockwell Transp. LLC v. Hooper*, 2023 UT App 71, ¶ 33, 534 P.3d 753, 761 (citation omitted).

[16] (Ex. 1 to Mot., Employment Agreement § 10.5, Doc. No. 156-1.)

[17] (*See* Opp'n 4, Doc. No. 169 (arguing the fee-shifting provision does not apply to Dr. Garvey's non-contract claims).)

[18] (Summ. J. Order 11, Doc. No. 154.)

But Ogden Clinic argues this provision also applies to Dr. Garvey's discrimination claims under Title VII and the ADEA.[19]  Ogden Clinic is incorrect.  Ogden Clinic contends both the contract claims and the discrimination claims relied on the assertion that it did not have valid cause to terminate Dr. Garvey's employment.[20]  While there is some factual overlap, the discrimination claims did not arise under the contract or rely on the contract's terms.  Rather, Dr. Garvey alleged Ogden Clinic discriminated against her by terminating her because of her sex and/or age in violation of federal law.  Further, Ogden Clinic cites no legal authority deeming attorney fees incurred in defending against Title VII and ADEA claims compensable under an employment contract's fee-shifting provision, like the one at issue here.  Ogden Clinic has not shown the fee-shifting provision applies to Dr. Garvey's discrimination claims.

Ogden Clinic acknowledges the fee-shifting provision does not apply to Dr. Garvey's defamation and tortious interference claims (although it asserts the fees attributable to those claims are "negligible," as addressed below).[21]  Accordingly, only fees incurred in defending against Dr. Garvey's contract claims are compensable under the employment contract.

---

[19] (Mot. 2–3, Doc. No. 156.)

[20] (*Id.* at 2.)

[21] (*Id.* at 3.)

### 2. Allocation of Fees

Under Utah law, when a party is entitled to an award of attorney fees for some claims but not others, the party ordinarily must allocate the time and fees incurred for compensable and noncompensable claims.[22]  "A court cannot award all attorney fees requested if they have not been allocated as to separate claims, but may deny attorney fees altogether for failure to allocate."[23]  However, a party "need not segregate fees for compensable and noncompensable claims if the claims 'sufficiently overlap and involve the same nucleus of facts.'"[24]  In other words, "if a compensable claim is inextricably intertwined with a noncompensable claim, fees related to the noncompensable claim are appropriately included in the fee calculation."[25]

Relying on Utah law, Ogden Clinic contends Dr. Garvey's discrimination claims are inextricably intertwined with the contract claims and, therefore, fees related to all these claims are appropriately included.[26]  Ogden Clinic explains that, in defending

---

[22] *See Foote v. Clark*, 962 P.2d 52, 55 (Utah 1998) ("[T]he party [seeking fees] must categorize the time and fees expended for (1) successful claims for which there may be an entitlement to attorney fees, (2) unsuccessful claims for which there would have been an entitlement to attorney fees had the claims been successful, and (3) claims for which there is no entitlement to attorney fees." (internal quotation marks omitted)).

[23] *Reighard v. Yates*, 2012 UT 45, ¶ 41, 285 P.3d 1168, 1183.

[24] *First Am. Title Ins. Co. v. Nw. Title Ins. Agency*, 906 F.3d 884, 900 (10th Cir. 2018) (quoting *Daynight, LLC v. Mobilight, Inc.*, 2011 UT App 28, ¶ 5, 248 P.3d 1010, 1013).

[25] *Airstar Corp. v. Keystone Aviation LLC*, 2022 UT App 73, ¶ 96, 514 P.3d 568, 585 (internal quotation marks omitted).

[26] (*See* Ogden Clinic's Reply Mem. in Supp. of Mot. for Award of Att'y Fees & Non-taxable Costs (Reply) 3–5, Doc. No. 172.)

against the discrimination claims, it cited Dr. Garvey's breach of the employment agreement as a legitimate nondiscriminatory reason for terminating her.[27]  And it points out the court ultimately determined Dr. Garvey did not identify evidence "sufficient for a reasonable jury to conclude that Ogden Clinic's stated reason for terminating her was pretextual."[28]  Dr. Garvey, for her part, disputes the claims are inextricably intertwined.[29]  She also argues awarding fees for defending against the Title VII and ADEA claims would contravene those statutes' fee-shifting provisions and public policy.[30]

Assuming Utah law governs the allocation issue,[31] Ogden Clinic has not demonstrated the discrimination claims are inextricably intertwined with the contract claims, or that they involve the same nucleus of facts.  There is some overlap, to be sure, where all these claims relate to Dr. Garvey's termination.  But as noted above, the discrimination claims do not rely on the contract's terms.  The essence of the contract

---

[27] (*Id.* at 4.)

[28] (Summ. J. Order 63, Doc. No. 154.)

[29] (Opp'n 4–8, Doc. No. 169.)

[30] (*Id.* at 8–10.)  The ADEA permits an award of attorney fees only to a prevailing plaintiff.  *See* 29 U.S.C. §§ 216(b), 626(b).  And under Title VII, a prevailing defendant may recover fees only if the plaintiff's claims were "frivolous, unreasonable, or without foundation."  *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978).  Ogden Clinic does not argue Dr. Garvey's Title VII claim meets this standard.

[31] Ogden Clinic relies on Utah law as the basis for its entitlement to fees, but it is not apparent Utah law governs allocation of fees for federal discrimination claims.  This is not a diversity case, and Utah law would seem to apply only to the state-law claims over which this court exercises supplemental jurisdiction.  *See Jones v. Denver Post Corp.*, 203 F.3d at 757.  The court need not resolve this issue, however, because Ogden Clinic has not shown it is entitled to attorney fees for the discrimination claims even if Utah law applies.

claim is whether "cause" existed to terminate Dr. Garvey under the terms of the contract, while the essence of the discrimination claims is whether Ogden Clinic terminated Dr. Garvey because of her sex or age.  Notably, even if cause for termination existed under the contract, Dr. Garvey could still have prevailed on her discrimination claims by showing the stated reason for her termination was pretext for unlawful discrimination.[32]  Indeed, she attempted to make such a showing by claiming she was treated differently from similarly situated employees who were younger and/or male, among other theories (though she failed to marshal evidence sufficient to overcome summary judgment on this issue).[33]  Thus, the contract claims and discrimination claims involved distinct facts and legal theories, as the parties' briefing and argument on summary judgment reflected.  And Ogden Clinic fails to cite any case law deeming federal discrimination claims "inextricably intertwined" with contract claims for the purpose of fee-shifting in these circumstances.  Because Ogden Clinic has not shown the noncompensable discrimination claims are inextricably intertwined with the compensable contract claims, allocation is required for these claims.

---

[32] *See Walkingstick Dixon v. Okla. ex rel. Reg'l Univ. Sys. of Okla. Bd. of Regents*, 125 F.4th 1321, 1337 (10th Cir. 2025) ("If the employer carries its burden to articulate a legitimate nondiscriminatory reason, the burden shifts back to the plaintiff to demonstrate that the employer's justification is pretextual—not the true reason for the employment decision." (internal quotation marks omitted)).

[33] (*See* Summ. J. Order 57–63, Doc. No. 154 (addressing Dr. Garvey's theories of pretext)); *see also Kendrick v. Penske Transp. Servs.*, 220 F.3d 1220, 1230 (10th Cir. 2000) (noting a plaintiff may show pretext through evidence that she was treated differently than similarly-situated employees who violated work rules of comparable seriousness).

Ogden Clinic acknowledges the defamation and tortious interference claims are not inextricably intertwined with the contract claims.[34]  Nonetheless, it contends allocation is not required because the time and fees spent on those claims were negligible.[35]  Alternatively, in its reply, Ogden Clinic suggests only 8.4 hours (out of 422.10 total hours) should be deducted for time an attorney and law clerk spent researching those claims.[36]

Ogden Clinic has not cited any authority permitting it to avoid allocation of the defamation and tortious interference claims on the basis that the work done on those claims was negligible.  Moreover, Ogden Clinic has not demonstrated the work was, in fact, negligible.  Ogden Clinic concedes at least 8.4 hours are attributable to those claims.[37]  Further, it admits at least some discovery was conducted on those claims (though Odgen Clinic describes it as minimal)—and that time is not included in the 8.4 hours.[38]  Additionally, the defamation and tortious interference claims were not treated as "negligible" on summary judgment; rather, the parties devoted moderate portions of briefing and argument to those claims.[39]  And Ogden Clinic acknowledges the 8.4-hour

---

[34] (Reply 5 n.3, Doc. No. 172.)

[35] (Mot. 3, Doc. No. 156; Reply 5–6, Doc. No. 172.)

[36] (Reply 6 & n.4, Doc. No. 172.)

[37] (*Id.*)

[38] (*See id.* at 5–6.)

[39] For example, four out of approximately nineteen pages of argument in Ogden Clinic's motion for summary judgment were devoted to these claims (more than twenty percent). (*See* Def. Ogden Clinic Professional Corp.'s Mot. for Summ. J., Doc. No. 116.)  And 3.5

estimate does not include time spent on summary judgment briefing.[40]  Accordingly, apportionment is required for the defamation and tortious interference claims, and Ogden Clinic's suggestion that only 8.4 hours be deducted is inadequate.

Where Ogden Clinic makes no attempt to allocate its fees between the contract claims and discrimination claims, and its suggested allocation for the other claims is inadequate, Utah law permits denial of the fee request in its entirety.[41]  But outright denial is unjustified here.  Dr. Garvey's contract claims were central to this case, and Ogden Clinic is contractually entitled to recover fees incurred in defending against those claims.  Based on a review of the billing statements Ogden Clinic submitted, the full case record, and the court's familiarity with the effort devoted to each claim in summary judgment briefing and argument, the court finds forty percent of Ogden Clinic's total claimed hours since this case was filed are fairly allocated to defense of the contract claims.[42]

This leaves one final allocation issue: Ogden Clinic's billing records include work done defending against Dr. Garvey's charge of discrimination filed with the Utah

---

out of fourteen pages of argument in its reply were devoted to these claims (twenty-five percent).  (*See* Def. Ogden Clinic Professional Corp.'s Reply Mem. in Supp. of Mot. for Summ. J., Doc. No. 145.)

[40] (*See* Ex. B to Reply, Suppl. Decl. of Katherine E. Priest ¶ 9, Doc. No. 172-2.)

[41] *See Reighard v. Yates*, 2012 UT 45, ¶ 41.

[42] *Cf. Cole v. Salt Creek, Inc.*, No. 2:08-cv-00928, 2014 U.S. Dist. LEXIS 60819, at *35 (D. Utah Apr. 28, 2014) (unpublished) (allocating fees based on the court's familiarity with the effort devoted to noncompensable issues, where the party seeking fees did not provide its own allocation).

Antidiscrimination and Labor Division, before this case was filed.[43]  Ogden Clinic does not acknowledge in its motion that it seeks fees for work performed before this case was filed; this is mentioned only in the supporting declaration.[44]  Presumably, the charge of discrimination relates to Dr. Garvey's discrimination claims, and Ogden Clinic offers no basis to conclude otherwise.  Accordingly, fees incurred before Dr. Garvey filed this case are not fairly allocated to defending against Dr. Garvey's contract clams, and those are excluded from the fee award, as described below.

### 3.  Reasonableness of Fees

Under Utah law, courts "must make an independent evaluation of the reasonableness of the requested fees in light of the parties' evidentiary submissions."[45] Courts may consider factors including:

> the difficulty of the litigation, the efficiency of the attorneys in presenting the case, the reasonableness of the number of hours spent on the case, the fee customarily charged in the locality for similar services, the amount involved in the case and the result attained, and the expertise and experience of the attorneys involved.[46]

Ogden Clinic provides detailed billing records and timesheets outlining the work done in this case by seven attorneys, a law clerk, and a paralegal, totaling 422.1 hours

---

[43] (*See* Ex. 2 to Mot., Decl. of Katherine E. Priest in Supp. of Mot. for Att'y's Fees and Costs (Priest Decl.) 4 n.3, Doc. No. 156-2; Ex. A to Priest Decl., Billing entries dated 7/1/2021 through 5/12/2022, Doc. No. 156-2 at 10–24.)

[44] (*See* Priest Decl. 4 n.3, 5, Doc. No. 156-2.)

[45] *Foote*, 962 P.2d at 55.

[46] *Cottonwood Mall Co. v. Sine*, 830 P.2d 266, 269 (Utah 1992) (quoting *Cabrera v. Cottrell*, 694 P.2d 622, 625 (Utah 1985)).

and $159,218.00 in fees.[47]  Ogden Clinic also provides an attorney declaration

describing the expertise, experience, and hourly rates of each timekeeper.[48]  In her

opposition, Dr. Garvey does not challenge the reasonableness of the hourly rates,

overall time spent working on this case, or particular billing entries.  Instead, she

erroneously states that Ogden Clinic failed to provide an attorney declaration or billing

records.[49]

Based on the detailed evidence Ogden Clinic provided, and the lack of a

meaningful response from Dr. Garvey on this issue, the court finds the hourly rates and

hours expended on this case reasonable.  The hourly rates are reasonable based on

each timekeeper's experience, expertise, and the rates customarily charged in this

locality.  The hours spent since Dr. Garvey filed this case are reasonable considering

the difficulty of the litigation, the amount involved in the case, and the result attained.

However, the court reduces the fee award from Ogden Clinic's total claimed

amount based on the allocations described above.  First, fees incurred before this case

was filed (on May 25, 2022)[50] are excluded.  The excluded amount totals $5,648.50 (for

---

[47] (*See* Priest Decl., Doc. No. 156-2; Ex. A to Priest Decl., Doc. No. 156-2 at 9–104
(billing records and timesheets)).

[48] (Priest Decl., Doc. No. 156-2.)

[49] (Opp'n 10, Doc. No. 169.)

[50] Dr. Garvey filed this case in state court on May 25, 2022, and it was later removed to
federal court.  (*See* Notice of Removal ¶ 1, Doc. No. 2; Ex. 1 to Notice of Removal,
Compl., Doc. No. 2-1.)

19.8 hours billed from July 1, 2021 through May 12, 2022).[51]  Subtracting this amount from the total request leaves $153,569.50 (402.3 hours), which reflects the total fees for work performed since Dr. Garvey filed this case.  Next, Ogden Clinic is entitled to recover forty percent of this amount, equal to $61,427.80, which reflects the fees fairly allocated to defending against Dr. Garvey's contract claims.

Accordingly, Ogden Clinic is awarded a total of $61,427.80 in attorney fees.

B. Nontaxable Costs

Ogden Clinic seeks $5,116.18 in nontaxable costs incurred for expert witness fees.[52]  Ogden Clinic engaged a forensic accounting firm to rebut Dr. Garvey's economic expert on the issue of damages.[53]  Specifically, Dr. Garvey claimed damages in the form of lost wages resulting from her termination, and both parties' experts provided reports addressing the calculation of those damages.[54]  Ogden Clinic argues it is entitled to recover these costs under Dr. Garvey's employment contract.[55]  And Ogden Clinic provides evidence supporting this request, including an invoice and both parties' expert reports.[56]  For her part, Dr. Garvey does not meaningfully respond to

---

[51] (*See* Ex. A to Priest Decl., Billing entries dated 7/1/2021 through 5/12/2022, Doc. No. 156-2 at 10–24.)

[52] (Mot. 1, 4, Doc. No. 156.)

[53] (*Id.*)

[54] (*See* Reply 8, Doc. No. 172.)

[55] (Mot. 1, 4, Doc. No. 156.)

[56] (Ex. B to Priest Decl., Account Statement, Doc. No. 156-2 at 105–06; Ex. C. to Reply, Expert Witness Report of David N. Bateman, Doc. No. 172-3; Ex. D to Reply, Expert

13

Ogden Clinic's request for nontaxable costs.  Instead, she incorrectly states Ogden Clinic seeks to recover deposition-related expenses with this motion.[57]

Based on the evidence Ogden Clinic provided, and Dr. Garvey's lack of meaningful opposition, the court finds Ogden Clinic reasonably incurred the expert witness fees at issue defending against Dr. Garvey's contract claims.  As such, Ogden Clinic is entitled to recover these costs under the cost-shifting provision of Dr. Garvey's employment contract.[58]  It appears Dr. Garvey claimed damages for lost wages in connection with both the contract claims and the discrimination claims.  But no allocation is warranted where the expert reports only address calculation of this "lost wages" category of damages and not the underlying claims.  Ogden Clinic would have incurred the same expert fees in defending against the contract claims even if Dr. Garvey had not asserted discrimination claims.  Accordingly, Ogden Clinic is entitled to recover the full amount of its claimed expert witness fees, $5,116.18, as nontaxable costs.

---

Report of Daniel T. Rondeau, Doc. No. 172-4.)  Ogden Clinic explains it agreed to split the cost of the expert's services with the Hospital, so it seeks to recover half the invoiced amount.  (*See* Reply 7 n. 5, Doc. No. 156-2.)

[57] (Opp'n 11, Doc. No. 169.)  As noted, Ogden Clinic filed a separate bill of costs, (Doc. No. 157), which is not addressed in this order.

[58] (*See* Ex. 1 to Mot., Employment Agreement § 10.5, Doc. No. 156-1.)

## CONCLUSION

Ogden Clinic's motion for an award of attorney fees and nontaxable costs[59] is granted in part and denied in part.  Ogden Clinic is awarded $61,427.80 in attorney fees and $5,116.18 in nontaxable costs.

DATED this 30th day of March, 2026.

BY THE COURT:

_____
Daphne A. Oberg
United States Magistrate Judge

---

[59] (Doc. No. 156.)